Dyett *v.* North American Coal Company.

Dyett and wife, impleaded with others, *appellants* and The North American Coal Company, *respondents.*

The separate estate of a *feme covert* in the hands of *trustees,* is in equity chargeable with debts contracted for the benefit of the estate. So such estate is chargeable where a *portion* of it has been converted into *other property,* in conformity to the provisions of the trust deed, and a debt is contracted for the benefit of such substituted property.

Ordinarily, in a suit in equity against husband and wife, where they unite in the answer, and the answer is *sworn* to by the husband alone, such answer is deemed the answer of the husband only ; but where the suit against them is in respect to the *separate estate* of the wife, and she unites with the husband in *signing* the the answer which contains *admissions* of the cause of action *on appeal* the wife will be held bound by such admissions, although the husband alone swore to the answer ; it is then too late to object that she did not swear to the answer.

*It seems,* that where a *feme covert* is proceeded against in respect to her *separate estate,* that though the husband must be made a party defendant, the *subpœna* to answer must be personally served on her, and in all other respects in the conduct of the suit she must be treated as a *feme sole.*

Appeal from chancery. The respondents filed a bill in chancery, before the vice chancellor of the first circuit, against the appellants and others, asking for a decree subjecting the income of certain *trust property* to the payment of a debt due to them, for a quantity of coal furnished on the order of *Joshua Dyett,* which was appropriated in the carrying on of a *cotton factory,* into which a portion of the *trust property* had been converted. The trust property sought to be charged is a lot in the city of New-York, on which there is a dwelling house erected, and in respect to which a *deed in trust* was executed by *Joshua Dyett* and *Jesse Ann* his wife, to certain trustees in September, 1821. The house and lot belonged to Mrs. Dyett previous to her marriage, and the deed in trust was executed in pursuance of an ante-nuptial contract. The trusts were, that the trustees with the consent and approbation of Dyett and his wife, should sell and convey the premises, and invest the proceeds of the sale either *in other real estate* or in public stocks, and permit Dyett to receive the rents and profits, or income of the trust estate during

coverture, for the use of himself and wife.  In May, 1823, the trustees, with the consent and approbation of Dyett and his wife, executed a *mortgage* upon the house and lot to the amount of $15,000, in part payment of a cotton factory purchased by them as *trustees.*  After the purchase, Dyett and wife went to reside in the vicinity of the factory, and from the income thereof derived to some extent at least their support and maintenance.  From 1826 to 1830, one C. M. Livingston had charge of the factory, and managed its concerns as agent, with the approbation of the then sole acting trustee.  Dyett residing near the factory, was permitted by the agent to take the superintendence of the factory and its concerns, and in July, 1828, he purchased of the respondents a quantity of coal, which was principally consumed in the business of the factory.  He drew on the agent for the price of the coal at sixty days, which draft was accepted by the agent, but not paid at maturity.  The factory having been sold in 1830, under a decree of the court of chancery, in a suit prosecuted by one Chapman against Dyett and his wife, the respondents, in 1831, filed their bill against Dyett and wife and the trustees, praying that their debt might be directed to be paid out of the income of the house and lot in New-York.  To the bill thus filed, an answer was put in by Dyett and his wife, *signed* by both, but *sworn to* only by the husband.  The wife did not appear by guardian, but by attorney.  The answer substantially admitted the facts as above stated.

The bill was *dismissed* by the vice chancellor, with costs. The complainants appealed to the chancellor, who *reversed* the decree of the vice chancellor and adjudged the debt due to the complainants, together with the costs in the original suit and upon the appeal, *to be paid out of the income of the trust estate.* See the case more fully stated and the opinion of the chancellor, 7 *Paige's Ch. R.* 9, *et seq.*  Dyett and wife appealed to this court, where the cause was argued by

*M. Hoffman & B. F. Butler,* for the appellants.

*J. Blunt & S. Stevens,* for the respondents.

After advisement the following opinion was delivered :

By Mr. Justice Cowen. I concur with the chancellor., that the debt in question was chargeable upon the wife's interest in the Broadway house and lot. It is plain that the opinion of the vice chancellor would have been the same, had he not felt a difficulty in seeing that the Broadway property and factory made parts of one and the same trust estate. It appears to me that it is impossible to separate them. Originally, to be sure, the marriage settlement was confined to the Broadway property; but it is not denied that in pursuance of the very deed of settlement, that identical property was made instrumental in the purchase of the factory. A part was taken from the Broadway property and invested in the factory, by the trustees, with the consent of Dyett and his wife, the *cestuis que trust.* The factory, therefore, in the eye both of law and equity, became substituted for that portion of the Broadway property which was deducted in order to the purchase. In legal effect, it became a part of the Broadway property, subject to the same trusts, and to be read as a part of the original deed. *Taylor* v. *Plumer,* 3 *Maule & Selw.* 562, 575. In this sense the coal, being purchased by Mrs. Dyett for the benefit of the factory, is but another mode of saying that it was for the use of the original trust property, the house and lot itself.

I have supposed that Mrs. Dyett made the contract for the coal. I am aware that this is denied, and correctly, so far as her personal contract is in question. But the denial is carried farther, by saying that she never assented to the appointment of *Livingston* as agent of the factory, who it is agreed did assume to be agent, and as such to make the contract. It is sufficient, however, that the fact of her assent is not denied, but expressly admitted by the joint answer of Joshua Dyett and herself. It is said that such an answer is not to affect her interests, although she joined in it; that still it is but the answer of the husband; and this I agree is, in general, so. I am not aware, however, that the rule has ever been applied to a wife who is sued in

respect to her *separate estate.* The bill is in the nature of an action at law against her for the recovery of a debt; and, although her person is not liable, she is proceeded against, in respect to her estate, as a *feme sole.* Having an estate, which she is capable of charging by her contract in the first instance as a *feme sole,* it seems to follow that her *admissions,* by way of answer or otherwise, are to be received in evidence against her. --A single woman sued at law may confess the action. Being liable as such in chancery, she may do the same thing as to the bill, and of course may admit any single fact tending to that consequence. Where her separate estate is completely distinct, and, as here, independent of her husband, she seems to be regarded in equity, as respects her power to dispose of or charge it with debts, to all intents and purposes as a *feme sole,* except in so far as she may be expressly limited in her powers by the instrument under which she takes her interest. *Jaques* v. *The Methodist Episcopal Church,* 17 *Johns. R.* 548, 585, *and the cases there cited by Mr. Justice Platt.* It follows, according to the same case, that she may deal with her husband by granting the estate to him, or appropriating the estate or its income to his benefit. She may, therefore, sue or be sued by her husband, or become a substantial party against or at the suit of others. With regard to the form of proceeding, it is true that she must sue by her *prochein ami,* or her husband may, by her consent, be joined with her against a third person. So he must be made a party defendant with her when she is sued; but he is then merely a formal party; the subpœna must be served, not as in ordinary cases, on the husband alone, but on the wife, and if he be absent beyond the jurisdiction of the court, the formality may be dispensed with and the wife compelled to answer alone. *Clancy's Husb. and Wife,* ch. 11, *p.* 358 *to* 365, *of Am. ed. of* 1828, *and the cases there cited.* 2 *Johns. Ch. R.* 139. In common cases the subpœna is served on the husband alone, though the suit be against him and his wife; and he then answers for both, *Ferguson* v. *Smith,* 2 *Johns. Ch. R.* 139; and according to the late cases of *Hodgson* v. *Merest,* 9 *Price,* 556, 563, and *Elston* v.

*Wood*, 2 *Mylne & Keene*, 678, the answer amounts to no more, although the wife join in it. In that case an order may be obtained, for good cause, that she answer separately, and she becomes a substantial party to the suit " only from the time of the order." *Jackson* v. *Haworth*, 1 *Sim. & Stu*. 161, 162. *Carleton* v *M'Enzie*, 10 *Ves*. 442. Then and then only can the answer be read against her as evidence ; and although a joint answer put in by the husband admit the allegations in the bill,— they must, according to *Hodgson* v. *Merest* and *Elston* v. *Wood*, be proved. In both these cases the admissions in the joint answer were rejected as incompetent, and the decree against the wife proceeded on independent proof. For all this, I can see no reason except that she is but a formal party , a mere cypher, neither served with process, nor appearing, having no copies, notice, solicitor or counsel independent of her husband ; every thing passing under his exclusive control. But the practice in such case, says Mr. Hoffman, is " inapplicable where the wife's separate estate is proceeded against. There she must be served with a subpœna personally ; and if absent, an advertisement under the statute must be resorted to." 1 *Hoffm. Ch. Pr*. 232. In *Jones* v. *Harris*, 9 *Ves*. 486, where the wife had not been served, Lord Eldon said " that where the service is upon the husband, not merely seized or entitled in right of his wife, and the plaintiff seeks satisfaction out of the separate estate of the wife, if she is considered a *feme sole* for other purposes, she must be so for that purpose also." In *Lillia* v. *Airey*, 1 *Ves. jun*. 277, Lord Thurlow said, " The husband is more a formal party than any thing else ; for the plaintiff really goes against the wife in respect to her separate maintenance." Thus her case is entirely reversed. She is primarily, if not solely liable ; and like every other step in the defence, the answer is her independent act as a *feme sole*. It would not be denied that the joint answer of a partner would bind him, and she is more than a partner. We are to intend that she had full notice from the beginning, and that her solicitor and counsel have conducted the suit as one really against her. The answer is signed by *Jesse*

Dyett *v.* North American Coal Company.

*Ann Dyett,* though sworn to by J. Dyett, her husband only. It purports throughout to be their joint and several answer, and fully admits the agency of Livingston. By signing the answer Mrs. Dyett has adopted that admission. It was therefore evidence against her in the particular cause as it would be in any other, and that, together with the other proofs, clearly fastens the debt upon her separate estate, to the extent decreed by the chancellor. The solicitor for the complainants had a right, as in other cases, to waive her oath to the answer ; and it is not to be tolerated that she should, after having led the complainants to act upon her answer at the hearing, without objection, for the first time in this court, as far as we can see, deny its legal force upon a defect of form which it was her business to avoid. Even if the objection be well founded, it should have been made below, where alone it could have been properly obviated. In *Hodgson* v. *Merest,* the answer being rejected, the cause stood over for proof upon terms, and the proof was finally obtained.

Livingston being the agent of Mrs. Dyett in respect to the factory, it follows, as we have seen, that a debt contracted by her is chargeable upon the whole of the trust estate, in which this is involved as a part.

It is obvious that the credit was not given for the coal to Joshua Dyett *individually.* There is full evidence not only that it was in fact furnished for the use of the factory, but the agent of the respondents might and probably did collect, from the face of the bill, that the whole was a factory transaction. I am not aware, however, that such knowledge was necessary. I take it to be sufficient that the debt was, in truth, contracted for the benefit of the trust estate. *Upton* v. *Gray,* 2 *Greenl.* 373.

The decree of the court of chancery should therefore be affirmed.

All the members of the court, with but one exception, concurring in this opinion, the decree of the chancellor was accordingly AFFIRMED.