# COURT OF APPEALS.

## RANSOM YALE, respondent, agt. ELIZA A. DEDERER, appellant.

### (*Note to opinion of* COMSTOCK, *J.*)

Although the legal disability of a married woman to contract remains the same, under the statutes of 1848 and 1849, as at common law, yet she may, as incidental to the perfect right of property and power of disposition which she takes under those statutes, *charge* her estate for the purposes and to the extent which the rule in equity has heretofore sanctioned in reference to separate estates.

A married woman may appoint or specifically appropriate her separate estate to the payment of her own or her husband's debts, and she may, if she pleases, even give it to her husband; but the contracting of a debt by her is not of itself an appointment or charge.

And the principle on which her liability depends cannot be extended to cases of a mere *surety* for the husband or a stranger.

A married woman is not an exception to the rule that there is no equitable liability upon a surety, when he cannot be held at law.

If the promise of a married woman is on her own account, if she or her separate estate receive a benefit, equity will lay hold of these circumstances, and compel her property to respond to the engagement. When these grounds of liability do not exist, there is no principle on which her estate can be made answerable.

### (*Note to opinion of* HARRIS, *J.*)

While, in respect to the separate property of a married woman, under the statutes of 1848 and 1849, the disability of coverture no longer exists, it still remains in respect to all her executory contracts. No personal remedy can be had against her in equity, any more than at law, upon any such contract.

In equity, there is no difference between the separate estate of a wife, created by operation of these statutes, and a similar estate created by deed or any other instrument.

Though it is often said, that in equity the wife is regarded as a *feme sole* in regard to her separate property, yet it has never been supposed that even in equity she incurs a personal obligation by her engagements. There can be no proceeding against her *in personam*. She is regarded as a *feme sole* only so far as to enable her to bind by her contract her own separate property.

There are two modes in which the separate estate of a married woman may be charged with the payment of her pecuniary engagement. The one where she has, in terms and by an appropriate instrument, made such charge, and the

other, where, though she has not, in making the contract, referred to her separate estate, or expressed her intention to satisfy it out of such estate, yet the circumstances of the case are such as to leave no reasonable doubt that such was her intention.

But where the intention to create the charge has not been expressed, and can only be implied from the fact that she has become indebted by a note or other obligation bearing her signature, either individually or jointly with her husband, it must appear that the debt was contracted for the benefit of her separate estate, or for her own benefit upon the credit of her estate, before the estate can be charged with its payment..

*January Term*, 1859.

THIS is a suit, in the nature of a bill in equity, to charge the separate estate of Mrs. Dederer, a married woman, with the payment of a promissory note, which she signed with her husband, Nicholas A. Dederer. It appears, from the pleadings and proofs in the case, that the note was dated December 26th, 1853, payable with interest, on the first of May, 1854, and was signed by both defendants. This note was given in the place of two notes, one of $589.93, dated December 23d, 1852, and signed by both defendants; the other dated March 19th, 1853, for $398, and signed by the defendant N. A. Dederer, only. These two notes were given for cows which the defendant N. A. Dederer purchased of the plaintiff. The defendant Eliza A. Dederer owned three farms in the county of Chenango, at the date of the sale of the said cows, and the giving of the said notes; one of about 200 acres, situated in the town of German, another about 215 acres, in Smithville, and about 90 acres of land situate in the town of Greene, and had, during the same time, personal property separate from her husband. When the defendant N. A. Dederer applied to the plaintiff to purchase said cows, he refused to sell to him except upon the condition that he would procure his wife to sign the notes with him, and which he agreed to do as a condition of the sale. The first note was signed by both defendants at the time. The second note was given by the defendant N. A. Dederer, with the agreement that he should procure his wife to sign it, and the note in suit was given on the surrender and for the consideration of the two notes; and Mrs. Dederer signed this note

Yale agt. Dederer.

with her husband, and there was some evidence in the case to show that these cows, or at least a part of them, went to stock one of her farms, but the court found that there was not evidence sufficient in the case to establish the fact that the purchase of these cows was for her benefit, or that they went to enhance her separate estate, or that either of the cows or the avails went for her benefit, and the court found that she signed the note, upon which this suit is brought, as surety for her husband. It was admitted upon the trial, that Mrs. Dederer had a separate property in personal and real estate, amply sufficient to pay the plaintiff's demand. It was proved that the defendant N. A. Dederer was insolvent; that the plaintiff had obtained a judgment against him upon this note; that an execution issued thereon against him had been returned *nulla bona*, and that he had made a general assignment of his property for the benefit of his creditors.

There is a stipulation in this case, " that no point is to be made, that the trustees of Mrs. Dederer are not made parties to this action."

This cause was tried at the Chenango special term, in August, 1855 (*reported in 21st ·Barbour R.* 286), and the general term in the 6th district on appeal affirmed said decision.

HENRY R. MYGATT, *attorney for respondent.*
FERRIS, CUSHING & SQUIRES, *attorneys for appellant.*

COMSTOCK, Judge. Regarding the appellant as the owner of the lands which are called her separate estate, without the intervention of any trust, the plaintiff's case is met with this difficulty. Disabilities of coverture prevent her from disposing of or charging an estate in lands in which she has the legal and the whole title. Until the change was made by the legislature (1830), in the law of trusts, there was a well-settled doctrine that a married woman could deal with her separate estate as though she were a *feme sole*. But this doctrine was a pure creation of the courts of equity. Trusts for the sepa-

rate use of married women were a marked though beneficent innovation upon the rules of the common law.

But, where the courts of equity sustained their validity, and recognized the wife's estate under them, it seemed to be a necessary result that she should have the power of disposition, and accordingly the power was conceded. In many of the adjudged cases, the exercise of this power has been spoken of as an appointment of the estate authorized by the deed or settlement in trust; but the settled doctrine now is, that she may dispose of or charge the estate in any manner and for any purpose not conflicting with the instrument under which she ac quired it. (*Jacques* agt. *The Methodist Episcopal Church*, 17 *John.* 548, *and cases cited*). The right of disposition must, therefore, be referred to the right of property enjoyed independently of the husband, and not to the theory of an appointment, pursuant to a power conferred by the authority of the trust. She might be restrained by the authority of the trust deed or instrument, but if not so restrained, she acted as a *feme sole* in the disposi tion of her separate estate.

But the separate estates, upon which the courts of equity ingrafted these peculiar doctrines, included necessarily only such rights and interests of the wife as would belong to the husband but for the limitation to her particular use. Such were personal estates, the rents and profits of lands during coverture, and the inchoate title which, by the birth of a child, the husband might acquire as a tenant by the curtesy. As to all such interests, the assent of the husband to a separate use duly manifested, and a direction to that effect by the donee of the estate, would give to the wife all the disposing capacity of a *feme sole*. But her interest in lands, when she owned them at the time of her marriage, was a legal estate demisable to her heirs, to which courts of equity did not and could not well apply the doctrines which have been stated. In reference to such an estate, she only had the disposing capacity which the common law or some enabling statute allowed to her. She could divest her title and bar the descent to her heirs, in England, only by a fine and recovery; and in this country only by a

conveyance, with certain solemnities of examination and acknowledgment.

Her acquisition, through a trust, of equitable rights which at law would belong to the husband, manifestly could not enlarge her capacity to deal with estates, which at law, as well as in equity, were entirely her own.

So an estate in fee might be conveyed directly to a woman after marriage, to her sole and separate use. In such a case, equity would convert the husband into a trustee for the use of the rents and profits during the coverture, which otherwise would belong to him.

In dealing with those, she would act in the capacity of a *feme sole*, upon the principles which have been stated. But in respect to the *corpus* of the estate, she could not dispose of it except in the mode provided by law, that is, by a fine and recovery, or such other solemnity as the law required for the disposition of estates in lands by married women. (*Roper on Husband and Wife*, 182; 2 *Story's Eq.* § 1392; *Clancy's Rights of Married Women*, 287, *and cases cited in notes to these authorities.*) If, however, the deed to her during coverture not only conveyed the estate to her sole and separate use, but in terms gave her an absolute power of disposal, then, acting under the power specially conferred, it seems she could, without the solemnities required by law, convey the whole estate, although no trust was interposed to protect the exercise of the power. (*Story's Equity, supra.*)

But this required the aid of no doctrine of equity, peculiar to separate estates, for a married woman may execute a power or trust imputing to her the character or capacity of a *feme sole*. Equity, it seems, in such cases, is not invoked, the law presumed the power, although the donee also held the fee of the land in respect to which it was to be exercised.

These general principles, which scarcely admit of a question, are evidently fatal to the present attempt to charge the fee of Mrs. Dederer's lands, and to dispose of that fee for the satisfaction of the alleged debt. The well-known disabilities of coverture, as they exist, at the common law, prevented her from

thus disposing of her real estate. This would be decisive of the case before us, but for the recent legislation of this state, "for the more efficient protection of the rights of married women." (*See the Statutes of* 1848, *ch.* 200, *and of* 1849, *ch.* 375.) It was not here claimed, on the argument, that the case is influenced favorably to the plaintiff by these statutes. They, nevertheless, seem to require some consideration. The act of 1849, amending the law of 1848, provides that "any married female may take by inheritance, gift, &c., and hold to her sole and separate use, and *convey and devise* real and personal property," &c., in the same manner and with the like effect as if she were unmarried. In respect to estates acquired and held under the protection of this statute, the disabilities of coverture would seem to be removed. A married woman may "convey and devise" real and personal property, as if she were unmarried. She may, therefore, dispose of lands in which she holds the legal title, without joining with her husband in the conveyance, and without the solemnity of private examination and acknowledgment.

I think it is plain, however, that the statute does not remove her incapacity, which prevents her from contracting debts. She may convey and devise her real and personal estate, but her promissory note or other personal engagement is void, as it always was by the rules of the common law. This legal incapacity is far higher protection to married women than the wisest scheme of legislation can be, and we should hardly expect to find it removed in a statute for "the more effective protection of her rights." It is quite another question, however, whether she may not charge her legal estate, held under the statute in the cases and to the extent recognized by courts of equity, in respect to estates held under a trust for her separate use. The right to charge her separate estate in equity resulted from the *jus disponendi* which courts of equity regarded her as having; and it was a necessary incident of the free enjoyment of her property. It would seem, from reasons quite similar, that she should have the power to charge an estate acquired and held under the statute referred to. The

estate, it is true, is a legal one, but the disability of coverture, which, we have seen, prevented her from disposing or charging such estate in equity, no longer exists.

That disability, as we have also seen, was overcome when she acted under a power of disposition conferred by the instrument conveying the estate. But that power is given in the broadest terms by the statute, and I see no reason why a power thus intended should not be equal in its results to one conferred by a private instrument. My conclusion, therefore, is, that although the legal disability to contract remains the same as at common law, a married woman may, as incidental to the perfect right of property and power of disposition which she takes under the statute, charge her estate for the purposes and to the extent which the rule in equity has heretofore sanctioned in reference to separate estates.

But without knowing facts which are not stated in the case, such as the time of Mrs. Dederer's marriage, and the time when she acquired the lands in question, it is impossible to say, with any certainty, whether she holds her title under the statute, and with the power of disposition which it confers.

If we assume that to be her condition (and the fact may so appear hereafter), then we are brought to the question principally discussed on the argument, and that is, whether she does and can charge her separate estate, real or personal, by signing a promissory note in no way for the benefit of such estate, but as surety merely for the husband. This question I have examined with the attention which its importance deserves.

The contract of a married woman being void at law, the difficulty of subjecting her estate in equity to the payment of a note or bond, given by her, was felt by the courts to be very great. The difficulty, however, was overcome, and the rule must now be regarded as settled, that the written engagement of a married woman, entered into on her own account to pay money and to be satisfied out of her separate estate, will be enforced as a charge upon such separate estate. (*North Am. Coal Co.* agt. *Dyett,* 7 *Paige,* 9 ; *Heartley* agt. *Thomas,* 15 *Vesey,* 598 ; *Bulpin* agt. *Clarke,* 17 *Vesey,* 365 ; *Stewart* agt. *Kirknell,*

3 *Madd.* 387; *Owen* agt. *Dickinson, Craig & Ph.* 48; 2 *Story Eq.* § 1400.) When the obligation is not on her own account and in no sense for the benefit of her estate, the question, whether a charge is thereby created, must depend, I think, on the principle which lies at the foundation of the rule just stated.

If the note or bond of a *feme covert* is to be taken as a particular appointment of her estate to pay it in the nature of an execution of a power of disposition, then I see no reason for a distinction, when she is a surety merely. This was the theory of some of the cases on the subject, but this was obviously a mere fiction. A simple engagement to pay money is not in its nature an engagement to pay out of any particular fund, and cannot, except by a fiction, be regarded as an appointment or disposition of the funds. There is also this further difficulty which was suggested by Lord COTTENHAM in *Owen agt. Dickinson, supra,* that if a married woman has contracted several debts in writing, and the instruments are to be regarded as appointments of her estate, the creditors would take priority according to the date of the several instruments. The contrary of this is plainly true. The creditors of a *feme covert* have no priority over each other, unless it be acquired by superior diligence in proceeding to obtain satisfaction, or by some specification expressly created for that purpose. Again, as the law now is with us since the statute of 1849, suppose, before or after the marriage, she take real or personal estate by inheritance or distribution. In such a case, the fiction of appointment under a power, when she disposes of such an estate, is too absurd to be for a moment entertained.

The earliest cases on this subject proceeded on a more intelligible principle, which did not require the aid of a fiction. Thus in *Norton* agt. *Turvelle* (2 *P. Wms.* 145), payment of a married woman's bond, given for money borrowed by her, was decreed out of her separate estate, on the ground that it was to be deemed as held in trust for the payment of her debts. This was regarded as one of the separate uses for which the trust was created. So in *Peacock* agt. *Monk* (2 *Vesey Ser.* 193),

Lord HARDWICKE said, if a wife, having an estate to her separate use, borrowed money and gave a bond for its payment, this would give a foundation to demand the money against her out of her separate estate. So also in *Holme* agt. *Tenant* (1 *Brown C. C.* 20), Lord THURLOW held that the trustees of a married woman's estate were obliged in equity to apply it to the satisfaction of her general engagements. These early cases did not suggest the fiction of an appointment, but proceeded on the nature of a trust, and the plain equity of requiring a married woman's engagements, entered into for her own benefit, to be satisfied out of the trust estate. Afterwards that fiction was resorted to, which, besides the objection to it as a mere assumption, having not the slightest foundation in fact, worked the actual injustice of rejecting the claims of creditors, whose demands were based upon a more general assumpsit, for money had and received where there was no written engagement to pay. In such cases the fiction of appointment was too gross to be received, and, therefore, as there was no appointment there could be no charge, and it was so held. (*See Baldwin* agt. *Williams*, 2 *Ves. Jr.* 138; *Jones* agt. *Harris*, 9 *id.* 486.)

But the still later cases have, in terms or effect, repudiated the fiction of an appointment, and with it the distinction between the written engagements of a *feme covert* and her general liabilities for moneys charged, services rendered or goods sold. In *Owen* agt. *Dickinson* (*supra*), Lord COTTENHAM restored the liability of separate estates to the basis on which it had been vested in the early cases above cited. His observations in that case demonstrated with great clearness that a simple note or bond cannot, in its very nature, be an appointment or charge upon the estate. Speaking of such instruments, he said, " It has sometimes been treated as a disposing of the particular estate, but the contract is silent as to the separate estate, for a promissory note is merely a contract to pay, without saying out of what it is to be paid, or by what means it is to be paid, and it is not correct, according to legal principles, to say that a contract to pay is to be construed into a contract to pay out of a particular property, so as to constitute a lien upon that

property." · "Equity," he adds, "lays hold of the separate property, but not by virtue of anything expressed in the contract, and it is not very consistent with correct principles to add to the contract that which the party had not thought proper to introduce into it." (*See also Murray* agt. *Barsle*, 3 *Mylne & K.* 209; *Bill on the Law of Property*, 518, 519; *Macqueen on Husband and Wife*, 301, 303.) The principle, in short, which now governs in cases of this kind, is, that a wife's separate estate is liable to pay her debts contracted during coverture, in whatever form they are incurred. Not because her contracts have any validity at law, nor by way of appointment or charge, but because equity decrees it to be just that they should be paid out of such estate. Of course it is not to be denied that a wife may appoint or specifically appropriate her separate estate to the payment of her own or her husband's debts, she may, if she pleases, even give it to her husband. What I am denying is, that contracting the debt is of itself an appointment or charge.

Can, then, the principles on which the liability depends be extended to cases of mere suretyship for the husband or a stranger? It seems to me it cannot. The obligation of a surety in all other cases is held to be *stricti juris*, and if his contract is void at law there is no liability in equity founded on the consideration between the principal parties. Thus, in *Ludlow* agt. *Simond* (2 *Caine's Cas. in error* 1), the bill filed to sustain a contract against a surety, who had been technically discharged at law, the subject was very fully examined in the court of errors, by Chief Justice KENT, and by Justices SPENCER and THOMPSON, and the suit was determined against the plaintiff, on the ground that there was no equitable liability upon a surety, when he could not be held at law.

Why should a married woman be made an exception to this rule? We are to remember that her contract is absolutely void at law, and when she is a mere surety there is no equity springing out of the consideration. If the promise is on her own account, if she or her separate estate receive a benefit,

equity will lay hold of these circumstances and compel her property to respond to the engagement.

When these grounds of liability do not exist, there is no principle on which her estate can be made answerable. If we hold that the signing of a note as surety brings a charge upon her estate, we must go further and hold also, that her guaranty, her indorsement, accommodation acceptance, unpaid bond, indeed, every conceivable instrument which she may be persuaded to sign for her husband or others, although absolutely void at law, are so far binding in equity as to charge the property with its payment.

This would be a doctrine sustained by no analogies, and opposed to the soundest policy. It would go far to withdraw those checks which are to preserve a wife from marital influences, which may be, and often are, unduly exerted, and yet baffle all detection. The doctrine, that equity regards her as a *feme sole* in respect to her separate estate, only admits that she may dispose of such estate with or without the consent of her husband, and without the solemnities which the law in other cases requires. But her mere promise to pay money, as we have seen, is not of itself such a disposition. Courts of equity, proceeding *in rem*, will take hold of her estate and appropriate it to the payment of her debts. But when her obligation is one of suretyship merely, she owes no debt at law or in equity. If not at law, which is very clear, then quite as clear not in equity.

It is true there are one or two English cases in which the trustees of a wife's separate estate were decreed to apply the personal property, or rents and profits of lands, to the payment of her obligations as surety. (*Stainford* agt. *Marshall*, 3 *Atk.* 68 ; *Healty* agt. *Thomas*, 15 *Vesey*, 596.) But these cases were decided at a period when the doubt was whether mere obligation of any kind to pay money could bring a charge upon the estate, without any reference to the distinction between debts contracted for the benefit of herself or of the estate, and engagements entered into as surety. The distinction was not considered. On the authority of those cases, *dicta* to the same

Yale agt. Dederer.

effect may be found in one or two elementary treatises (2 *Story's Eq.* § 1400). We have also been referred to the case in this court in *Vanderheyden* agt. *Mallary* (1 *Comstock,* 452). But the point there determined was, that the debts of a wife contracted before marriage were not a charge upon the separate estate held by her during the coverture. The remark of JEWETT, Ch. J., now invoked, was *obiter* merely, and it appeared to have been founded entirely upon the observation cited from Judge STORY. The case did not call for an examination of any such question. No decision in this state has ever gone beyond the doctrine which I have stated. (*Curtis* agt. *Engel,* 2 *Sand. Ch. R.* 287; *North Am. Coal Co.* agt. *Dyett,* 7 *Paige,* 9, *S. C.;* 20 *Wend.* 570.) In *Curtis* agt. *Engel,* it was held by Vice Chancellor SANDFORD, that in order to create a charge, it must be shown either that the debt was contracted for the benefit of the wife's separate estate, or for her benefit upon the credit of such estate.

I am satisfied, on the whole, that the decision under review is, upon the facts before us, opposed to principle and sound policy, and that it rests upon the basis of no established doctrine.

The judgment should be reversed, and a new trial granted.

HARRIS, Judge. The effect of marriage at the common law is to vest the property of the wife in the husband's personal estate absolutely, and real estate during the continuance of the marriage. But in equity, and now by statute, the wife is capable of holding both real and personal property to her own separate and exclusive use. Incidental to this capacity, is the power of disposition; so that now, except in cases where she is restricted by the terms of the instrument under which she acquires title, the wife has the same dominion and power of disposition, in respect to her separate property, as if she were unmarried.

But while, in respect to her separate property, the disability of coverture no longer exists, it still remains in respect to all her executory contracts. No personal remedy can be had

against her in equity, any more than at law, upon any such contract. Her contracts are only valid so far as they operate upon her separate estate. "Although she is still incapable of charging herself at law," says COWEN, Justice, in *Gardner* agt. *Gardner* (22 *Wend.* 526), "and equally incapable in equity of charging herself *personally* with debts, yet the better opinion is, that separate debts, contracted by her *expressly on her own account*, shall in all cases be considered an appointment or appropriation for the benefit of the creditor, as to so much of her separate estate as is sufficient to pay the debt, if she be not disabled to charge it by terms of the donation."

In equity, there is no difference between the separate estate of a wife, created by operation of the statutes of 1848 and 1849, relating to married women, and a similar estate created by deed or any other instrument. 'If it be conceded that the effect of these statutes is to vest in her a legal title, whereas before, when her interest was acquired by means of a settlement or deed, she had only an equitable estate, still, so long as her contracts are affected by the disability of coverture, the debts of the wife can only be enforced against her separate estate, however acquired, by a specific charge of such debts upon the separate estate. This can only be done in a court of equity. The principle upon which this jurisdiction is exercised is well stated by Lord COTTENHAM, in *Owens* agt. *Dickinson* (*Craig & Phil.* 48). It was there held that the engagements of a married woman ought to be enforced against her separate estate, not as the execution of a power, but as the exercise of a right of property to which is necessarily incident the power of contracting debts to be paid out of it. "Inasmuch," it is said, "as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of her property, as the only means by which they can be satisfied." Though it is often said, that in equity the wife is regarded as a *feme sole* in regard to her separate property, yet it has never been supposed that even in equity she incurs a personal obligation by her engagements. There can be no

proceeding against her *in personam*. She is regarded as a *feme sole*, only so far as to enable her to bind by her contract her own separate property. Upon this subject, I concur in the views expressed by the judges of the supreme court, who delivered the prevailing opinions in *Colvin* agt. *Currier* (22 *Barb.* 371).

It remains to inquire whether, in this case, the wife has made such a contract as, by a proceeding *in rem* in a court of equity, should be enforced against her separate property. At the first, it was supposed that the wife could only bind her separate estate by some act creating a direct charge upon it. But in *Hulme* agt. *Tenant* (1 *Brown*, *C. C.* 20), decided in 1778, the question was presented how far the general engagement of the wife should be executed out of her separate property. In that case, the suit was upon a bond executed by the husband and wife, for borrowed money. The principal part of the money had been borrowed by the wife herself. Lord THURLOW declared the rule to be, that the general engagement of the wife shall operate upon her personal property, and the rents and profits of her real estate; and that her trustees should be required to apply the personal estate, and the rents and profits as they might arise, to the satisfaction of such engagement. The doctrine of that case has been much discussed in the English courts of equity, but is now deemed to be settled by the decision of Lord BROUGHAM, in *Murray* agt. *Barlee* (3 *Myl. & K.* 209). In that case, a married woman, living apart from her husband, and having a separate estate, had employed a solicitor in various transactions and had promised by letter to pay him. It was held, that the separate property of the wife was chargeable with the payment of the solicitor's bill. It is worthy of remark, in reference to this case, that the services, for which the plaintiff claimed to be paid out of the separate estate of the wife, were rendered for a married woman who lived apart from her husband, and not only upon the credit, but doubtless for the benefit of such estate. The single question before the court was, whether the pecuniary contract of a married woman, in which there was no reference to her sepa-

rate estate, should be satisfied out of such estate. It was regarded as a question of intent, and the court held, that inasmuch as the wife, when she made the engagement, could not be supposed to have intended to do an idle thing, she must be presumed to have intended to satisfy her engagement out of her separate property. The charge was established, because the circumstances of the case were such as to justify the inference that such was the intention of the wife.

Thus it appears that there are two modes in which the separate estate of a ·married woman may be charged with the payment of her pecuniary engagement. The· *one*, where she has, in terms and by an appropriate instrument, made such charge, and the *other*, where, though she has not, in making the contract, referred to her separate estate, or expressed her intention to satisfy it out of such estate, yet the circumstances of the case are such as to leave no reasonable doubt that such was her intention. What shall be deemed sufficient evidence to demonstrate such intention, has been regarded as a question of some difficulty. "The fact," says STORY, "that the debt has been contracted during the coverture, either as a principal or as a surety for herself or for her husband, or jointly with him, *seems ordinarily* to be held *prima facie* evidence to charge her separate estate, without any proof of a positive agreement or intention so to do. (2 *Story's Eq. Jur.* § 1400.) The extraordinary caution, perhaps I may say hesitation, with which this proposition is stated by the learned author, deserves to be noticed in this discussion. The writer himself adds that the proposition furnishes "a strong case of constructive implication, founded more upon a desire to do justice, than upon any satisfactory reasoning."

It should be conceded, I think, that in England the decisions have gone the length of holding that where the wife, living with her husband, gives her own note or other obligation to pay her own debt, or unites with her husband in giving such a note or obligation to pay his debt, it shall, without any other evidence of her intention, be charged upon her separate estate. But in this state the rule has never been carried so far.

The primary object in creating a separate estate and allowing the wife to hold and dispose of her separate property, independently of her husband, has been kept in view. "The wife," says the chancellor, in *Gardner* agt. *Gardner* (7 *Paige*, 112), "may have a separate estate of her own, which estate is chargeable in equity for any debt she may contract on the credit of, or for the use of, such estate." In the same case, upon appeal, COWEN, Justice, says: "The better opinion is, that separate debts, contracted by the wife *expressly on her own account*, shall in all cases be considered an appointment or appropriation for the benefit of the creditor as to so much of her separate estate as is sufficient to pay the debt." (*Gardner* agt. *Gardner*, 22 *Wend.* 528.) The same rule is stated with still greater distinctness by the late Vice-Chancellor SANFORD, in *Curtis* agt. *Engel* (2 *Sand. Ch. R.* 287): "To sustain their suit," he says, "the plaintiffs must show that the debt was contracted *either for the benefit of the separate estate of the wife, or for her own benefit, upon the credit of the separate estate.*" He adds that "whatever may have been the expressions of judges on the subject, this is the utmost extent to which the doctrine has been carried by the decisions in this state." (*Dickerman* agt. *Abrahams* 21 *Barb.* 551; *Colvin* agt. *Currier, above cited; Goodall* agt. *McAdam and wife*, 14 *How. Pr. R.* 385.) In the latter case, the wife had united with her husband in signing a bond for the payment of money. The action was brought for the purpose of charging the payment of the bond upon the separate estate of the wife. After a pretty full examination of the authorities on the subject, the conclusion of Mr. Justice HOFFMAN is, that where a note or bond is signed by the husband and wife, in the absence of any evidence to show that it was given for the benefit of the wife, the legal inference is, that it was for the debt of the husband, and the separate estate of the wife will not be charged. So, also, in *The North American Coal Company* agt. *Dyett* (7 *Paige*, 9), the chancellor says: "The *feme covert* is, as to her separate estate, considered as a *feme sole*, and may, in person or by her legally authorized agent, bind such separate estate with the payment of debts

Yale agt. Dederer.

contracted for the benefit of that estate, or for her own benefit upon its credit. (*Same Case upon appeal*, 20 *Wend.* 570.)

The rule thus uniformly asserted by the courts of this state is, in my judgment, more equitable and more in harmony with the policy of the law, which allows a married woman to hold and dispose of her property independently of her husband, than the rule which has been adopted by the supreme court in this case. It is simply a rule of evidence. All agree that when the wife has expressly charged the payment of a debt upon her separate estate, whether it be her own debt or the debt of another, such charge is valid and will be enforced. But to hold that the mere fact of her engaging to pay money, without regard to the question whether such engagement was for her own benefit or that of her estate, is sufficient evidence of an intention to charge such payment upon her separate estate, would, in many instances, defeat the very object of allowing her to hold a separate estate. Indeed, there is much to recommend the practice, which has been adopted in some of the states, of looking into the circumstances of the case sufficiently to see that the wife will suffer no injustice, before allowing a charge upon her separate estate to be enforced. (*Maywood* agt. *Johnson*, 1 *Hill's Ch. R.* 228.) In this case it was held, that the court would inquire into the propriety of an express charge, and not allow the wife to charge her estate by her own mere act and will, without evidence that it was necessary, or at least proper; and in *Reid* agt. *Lamar* (1 *Strobhart's Eq.* 27), it was held that where property was settled upon a wife, to be at her "full and free disposal," it was not to be charged with a note given by her with her husband.

The object of settlements, and the other arrangements which were resorted to for the purpose of securing to the wife a separate estate, was "to protect her weakness against the husband's power, and provide a maintenance against his dissipation." So, too, the legislature, when it declared that the property of the wife "shall not be subject to the disposal of her husband, nor be liable for his debts, and continue her sole and separate property as if she were a single female," intended, so far as it could

be done by legislation, to protect her against the improvidence and misfortunes of her husband. At the common law, the power of the husband over her estate as well as her person was almost unlimited. By this statute, and before by settlements and other contrivances which were sanctioned by a court of equity, the wife is enabled to enjoy her own property independently of her husband.

This right of enjoyment includes the right of disposition. Having this power, she, of course, has the power to charge the estate with the payment of her debts. When she does this of her own free will, uninfluenced by any unfair practices, however injudicious or improvident the act, the charge must be enforced. But when her intention to create such a charge has not been expressed, and there is no direct evidence of such intention, the mere fact, that the creditor is able to present a note or other obligation bearing her signature as well as that of her husband, ought not—in view of the policy of the law under which she holds her property, and, as a wife, liable to be controlled by influences which it may be impossible to detect—to be regarded as sufficient evidence to justify the inference that it was her voluntary intention to charge the payment of the debt upon her own separate property. I think that in such a case the equitable rule is, that which has been invariably adopted in this state, which is, that where the intention to create the charge has not been expressed, and can only be implied from the fact that she has become indebted, either individually or jointly with her husband, it must appear that the debt was contracted for the benefit of her separate estate, or for her own benefit upon the credit of her estate, before the estate can be charged with its payment.

In the case before us there is an entire absence of any such proof. Indeed, the contrary is proved. Instead of being the debt of the wife, it is proved to be the debt of the husband. There is no evidence that the wife consented to have the payment of the note charged upon her separate estate, except such as is derivable from the fact that her signature is found upon the note. Under what circumstances, or upon what represent-

ations, or by what influences, she was induced to sign the note does not appear. I am of opinion that such a state of facts is not sufficient evidence of an intention, on the part of the wife, that the payment of the note should be charged upon her separate estate.

The judgment of the supreme court, therefore, should be reversed, and a new trial granted, with costs to abide the event.

T. R. Strong, Judge, expressed no opinion; Denio and Roosevelt, Judges, dissented.

Judgment reversed, and new trial ordered.