**FIRST CITIZENS TRUST CO, Gdn v HARRIS et**

Ohio Appeals, 2nd Dist, Franklin Co

No 2070. Decided March 1, 1932

John H. Summers, Columbus, for plaintiff.

W. E. Babcock, Columbus, for Louise C. Cox, Helen D. Brown, William D. Cox, George M. Babcock, Guardian ad litem for Elizabeth Brown and Townsend Brown II.

Harley E. Peters, Columbus, for William D. Warner, Randolph S. Warner, Eulalie Bragdon, Guardian ad litem for Mary D. Warner, Lucy M. Warner, Randolph Stephen Warner, and John Van Cleff Warner.

Butler, Carlile & Bartlett, Columbus, for Mary P. Sowers Harris.

HORNBECK, J.

It is a cardinal rule of construction of wills that in determining the intent of the testator advantage shall be taken of anything which appears within the four corners thereof in the light of circumstances surrounding the testator at the time of the execution of his will. There are also certain principles which must be borne in mind. In Ohio, in case of doubt, the law favors the vesting of the largest possible estate at the earliest date possible under the will. **Linton v Laycock, 33 Oh St, 128; Bolton v Bank, 5 Oh St, 293.**

"A devise of lands should be construed to convey the entire estate of the testator in such lands in as far as he can lawfully dispose of the same, unless it clearly appears from the will that the testator meant to dispose of a smaller estate."

Page on Wills, 654.

These general principles have been carried into specific statutory law in Ohio. §10580, GC:

"Every devise in a will of lands, tenements, or hereditaments, shall convey all the estate of the devisor therein, which he could lawfully devise unless it clearly ap-

pears by the will that the devisor intended to convey a less estate."

Thus, we begin the consideration of the meaning of Item VI of the will of William G. Deshler, charged with the obligation of granting to his children named in the Item the greatest possible estate and vesting at the earliest possible moment consonant with reasonable interpretation of the language by him employed and the purpose to limit this quality of estate must appear by clear language. We find certain indicia, helpful in determining the meaning of the testator in the language employed in Item VI of his will independent of technical rules of construction.

Item VI was a residuary item, dealing as the item states with real, personal and mixed property. It included not only the real estate under immediate consideration, but a substantial amount of personal property. The beneficiaries specifically named in the Item were all the children of testator, the natural objects of his bounty. There is nothing in the instrument, save and except it be found in a rule of construction, which breathed any purpose to limit or entail the estate granted to his children. The record discloses that Mr. Deshler had in his lifetime executed many trusts in which there appeared the avowed intent to restrict the benefits thereof to those of the Deshler line. It is obvious that he knew how to accomplish such a purpose. This is clearly disclosed in a part of the language in the Deshler Hotel trust.

"My intention is to set apart by this trust, the above named property so that it can not be aliened, taken away or subjected to any contingency, but shall remain for the sole use of the beneficiaries hereto, so long as the law will permit."

"My reason for this disposition of this property, is that it is ancestral, and where I was born, and I desire to pass it down the family line in the manner hereinafter provided, so far as the law will allow," etc.

When in his will he made no statement respecting a purpose to restrict any estate therein devised and bequeathed to those of the Deshler line, if it has any meaning whatever, it tends to support the theory that he had no purpose to so restrict estates therein created. We find some significance in the use of the phrase in the last paragraph of Item VI: "Among all of my remaining children." When the testator made his will, all of his children and all of the children named in Item VI were living. He knew that within reasonable probability he would die before the greater number of his children and if one child or even two children predeceased him there would still be at his death a number of remaining children. It was, therefore, natural for him to characterize those who might survive as "all of my remaining children." If the will is construed as contended for by the Deshler heirs a contingency may have arisen where one child only would have been a survivor to take which fact must have been known to the testator and would have suggested the use of the words: "child or children" instead of "all my remaining children." We appreciate that "children" may, as required by the context of the will or the circumstances, be construed to mean "child." But accepting the language used by the testator, in its natural meaning, it seems probable that he would not have said "all of my remaining children" had he intended that it should apply in one contingency to one remaining child.

In Mr. Deshler's will we have no preceding life estate to take effect before his children come into the estate which is created for them by Item VI. The only provision made for Mr. Deshler's widow was the privilege of using their home for two years after his decease. The trust deeds offered in evidence were effective on and after the date of execution whereas the will speaks from the date of the death of the testator.

In our judgment, it likewise is significant as tending to support the conclusion that the testator did not desire to hold the avails of Item VI within the Deshler blood possibly to the last member thereof, that he made no provision whatever for placing the very considerable personal estate therein bequeathed in a trust.

Of course this was not required and without such provision the money would pass to the children without restriction but if he intended the real estate to be held in the Deshler line in one contingency until the death of the last surviving child it is probable that he would have made such specific provision for the personal estate.

The first clause of Item VI standing alone clearly passes to the children therein named an absolute fee simple title to the real estate included in the devise. The difficulty arises from the contingencies following this specific devise and bequest in the second and third clauses of the Item. Had the Item concluded with the first paragraph the statutory law of Ohio would have directed the course of descent by

§10581, GC, the effect of which would have been, if any of the devisees had died before the testator to have passed his share to his children, if any living; if no child living, then to the survivors. If the testator had chosen to employ the specific language of §10581 GC in Item VI, there could have been no doubt of its meaning. We see no reason whatever requiring a conclusion that because a testator has substantially accomplished, in the use of the language, the purport and effect of a specific statute it should require construction that he did not mean that which the statute, itself, imports. In other words, there is no rule of construction against construing the second and third clauses of Item VI as written with a purpose to prevent lapse, if that was the intention of the testator. We are of opinion that such was the purpose of Mr. Deshler by the second and third clauses of Item VI. There are two reasons which may have actuated the testator in writing in the lapse proviso and in choosing the language used in the second and third paragraphs of the Item instead of relying upon §10581, GC. First, it prevented the issue of a child of testator or the survivors of the child taking under the statute and placed them in the relation of devisees under the will. This changed the obligation of one succeeding as issue of a child of testator to take subject to any indebtedness which may have been due from the parent to the testator. **Baker et v Carpenter, 69 Oh St, 15.** It is likewise true, as suggested in the brief of counsel for defendant, Harris, that the course of title directed in the lapse proviso written into Item VI by the testator differs in one particular from that provided by the lapse statute.

We then come to the question upon which counsel have spent by far the greater portion of their most excellent briefs, namely, the technical construction of the double or alternate limitations found in the second and third paragraphs of Item VI, namely:

"In case any of my children shall die leaving issue the share of the deceased shall go to the issue of the deceased equally. In case any of my children shall die leaving no issue, then the share of the deceased shall be equally divided among all of my remaining children."

It is the claim of counsel for defendant, Harris, that where a devise in fee is followed by a limitation over upon the death of the devisee, the testator prima facie contemplates the death of the devisee within the testator's life time. This is conceded by counsel for the Deshler heirs to be the general rule but not in Ohio. The theory of counsel for defendant, Harris, is that there is no contingency in death, that death is a certain event; and that the testator, by making gifts over upon the death of the devisee, is presumed to have intended the death of the devisee within his own life time in the absence of further language in the will showing the contrary and that a gift over upon the contingency of the devisee dying with or without issue covers all contingencies which may happen and, therefore, are as certain to happen as death, itself. Counsel for the Deshler heirs contend that where the contingency of the death of a legatee can be referred to any other period than during the life time of the testator, as in the case of the death of the devisee with issue or in case of the death of the devisee without issue, the testator is presumed to have contemplated the death of the devisee, either before or after testator's death; and that the substitution should occur in the event of the death of the devisee, whenever it might occur.

Our attention is drawn to **Parish's Heirs v Ferris, 6 Oh St, 563,** a single contingency case, holding, that:

"Where there is a devise in fee to A, but if he 'die without heirs,' or 'without children,' or 'without issue,' then to B in fee, the words 'if he die without issue,' or words of similar import, are to be interpreted according to their popular and natural meaning, and as referring to the time of death of A, unless the contrary intention is plainly expressed in the will, or is necessary to carry out its undoubted purposes; and if A have no children or issue at the time he dies, B takes under such devise."

To like effect, **Niles et v Gray et, 12 Oh St 328; Taylor v Foster, 17 Oh St, 166, Carter v Reddish, 32 Oh St 13; Piatt v Sinton, 37 Oh St, 353; Anderson v Realty Co., 79 Oh St, 49; Briggs v Hopkins, 103 Oh St, 324.**

It may with reason be urged that a devise in fee to A followed by a gift over "to his issue" should be construed in accord with Parish v Ferris and cognate cases.

But the logic of the single contingency cases does not ex necessitate require the same conclusion where there is a double contingency as in the will under consideration.

A rule of construction as well establish-

ed as Parish v Ferris, and other cases cited, supra, determines that where there is a devise to A in fee and in case of his death to B without words showing a contrary intent, the contingency referred to is the death of the first named devisee during the life time of the testator and if such devisee survives the testator he takes an absolute fee. Preparation of Wills and Trusts, Ramson, 224; 40 Cyc., 518; Jarman on Wills, 5th Ed., 752; **Renner v Williams, 71 Oh St 340.**

We do not say that the second and third paragraphs of Item VI cover all contingencies and are as certain as the language "if my children die" but the possibility of the interest of any child of testator under the construction contended for by counsel for Deshler heirs being greater than a life estate is remote, indeed. If perchance a child of testator was the last survivor of her brothers and sisters, all of whom had died without children she might succeed to a fee simple absolute estate which fact could not be determined until he died and, therefore, not because of any contingency in the will but because no one was left upon whom the contingencies therein provided could operate.

In Ohio there is but one case which, upon the facts, is clearly in point, namely, **Phillips, Executor v Cole et, 11 Oh Ap 431.** The Item under consideration read as follows:

"Item Fourth. The rest and residue of my estate after the payment of debts above named and after setting apart and investing the said sum of ten thousand dollars ($10,000.) to be divided equally among my children as follows, share and share alike: M. Francis Cole, S. P. Chase Cole, W. Utteridge Cole, Robert L. Cole, Mary Shellenberger and Alice King. Should any one or more of my children above named die leaving a child or children, then said child or children shall take the parent's share. If they should die leaving no child or children, or their legal representatives, then such share or interest I direct to be divided equally among the survivor or survivors."

The court held that,

"Item Four of said will discloses that the only event to which the contingency of death can refer is the death of Thomas F. Cole, the testator, which is the period or time fixed when the legatees would come into the enjoyment of their legacies and at that time their rights and interests in and to their respective legacies became vested absolutely * * *."

And that upon the death of the testator,

"the bequest made in his will to M. Francis Cole became a fixed and absolute estate in him. and that it should be paid to Anna B. Cole, as executrix of the last will and testament of the said M. Francis Cole, deceased."

The judgment in this case supports the construction contended for by counsel for defendant, Harris. However, there is no discussion of the theory upon which the parties are at difference in this case, namely, the effect of the double contingencies in the Item.

Besides the Cole case, supra, the mass of authorities cited in the exceptional briefs of counsel dealing with double contingencies are all from jurisdictions other than Ohio and by far the greater number from England. The English cases cited and discussed show a marked difference of opinion. Among those supporting our conclusion are Johnson v Antrobus, 21 B. 556, Gee v Manchester, 117 Re. 1464; Clayton v Rowe, 106 Re. 1323; and in the United States, Barrell v Barrell, 38 N. J. Eq., 60 and Harris v Dyer, 18 R. I., 540. The strongest support for the position of the trial court and for the Deshler heirs is found in the Illinois cases. and particularly Drager v McIntosh, 316 Ill., 460; 147 NE 433, and Liesman v Liesman, 331 Ill., 287, 162 NE 855.

Drager v McIntosh, which was a double limitation case, held that the children of the testator took only a life estate. If this case is controlling authority it requires the conclusion that the Deshler children took a life estate. We believe the special concurring opinion of Judge Farmer in Drager v McIntosh, wherein he held that the children of the testator took a fee simple title absolute under the item under consideration is supported by stronger logic than the majority opinion. We quote a portion thereof because it comports with our theory of the instant case.

"It seems to me the court has construed the will in this case contrary to the plain intention of the testator. If he intended to give his children living at the time of his death a fee-simple absolute estate but, in order to guard against lapses in case any of them predeceased him, he made further provision by paragraph 3, no rule of

law or of public policy would be violated by giving effect to the intention of the testator. The question is one of intention of the testator, and that ought not to be obscured by courts by technical refinements of arguments which are much less easily understood than the plain language ·of the will. As I see it, there is no occasion for 'darkening counsel by words'." * * *

"There is no pretense that any rule of law or of public policy would be violated if the testator intended in the will here under consideration that his children living at the time of his death should take a fee simple absolute, but, if any of them predeceased him, paragraph 3 was executed to guard against lapses. To my mind the testator's intention as expressed by his will is not doubtful. But, conceding for the sake of argument that it is, then the rule we have referred to favors the construction which gives the first takers a fee-simple."

Liesman v Liesman, supra, held that the residuary devise to named children in fee simple absolute forever qualified with the conditions:

"That upon the death of any and either of the children, the child of such deceased child, if any there be, shall take the share of the parents so deceased."

and,

"Should any of my children die leaving no issue, then the share of such deceased child was to be divided among all of my surviving children, share and share alike."

vested the children of the testator with a life estate only.

The scrivener who drafted the Deshler will was, undoubtedly well qualified and knew how to use apt and customary language. Had he desired to create life estates in the children with remainders over, to their issue, or, their survivors, we do not believe he would have employed the technical form of language used in the second and third paragraphs of Item VI.

**Renner v Williams, 71 Oh St, 340,** is helpful on principle. It is, however, a single condition case. The items construed were:

"Item Third. I do give all the balance of my real and personal estate to my son Sylvester W., and my daughters, Huldah and Mary C.. to be divided equally between them, share and share alike.

"Item Fourth. In case of the death of either one or more of the children named in item three, namely, Sylvester W., Huldah and Mary C., the survivor or survivors, shall inherit the property bequeathed to them both in item one· and item three, if more than one survivor, to be divided equally, share and share alike."

The court held that the language "in case of the death of one or more of the children" contemplated their death before the testator, and that the three named children having survived the testator took a fee simple absolute estate. The court said:

"Unless it fairly appears from the will that he does not do so, the testator must be presumed to be contemplating and providing for the devolution of his property at the time of his death."

We cannot, in the proper limits of this opinion present a discussion of the great array of cases which counsel have set out in their briefs. The briefs have been most helpful and indicate research almost unparalleled. We have read many of these cases. They come from different jurisdictions and are authority on both sides of the question presented by the double contingency features of Item VI.

We believe that Item VI of the Deshler will requires a construction that Elizabeth Deshler Sowers, surviving her father took a fee simple title absolute in the real estate included in the residuary item, and that the defendant Mary P. Harris. succeeding through the will of Daniel H. Sowers, to the share which his wife took, is entitled to have her title quieted to one-fifth of said real estate.

This construction gives consideration to all parts of Item VI, reconciles the purpose of testator to create a fee simple absolute estate in his children as disclosed in the first clause of the item, gives practical and reasonable interpretation to the second and third clauses and fixes the largest possible estate in the Deshler heirs at the earliest possible time, an obligation which the law enjoins upon courts when it can be reasonably effectuated.

ALLREAD, PJ, and KUNKLE, J, concur.